UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL TENORE,

Plaintiff,

v.

E. HOROWITZ, et al.,

Defendants.

No. 2:17-cv-1802 KJM KJN P

ORDER AND FINDINGS AND
RECOMMENDATIONS

Plaintiff is a state prisoner, proceeding pro se, with a civil rights action under 42 U.S.C. § 1983. Defendants' motion for summary judgment based on exhaustion of administrative remedies is before the court. Defendants do not dispute that plaintiff exhausted his claims concerning his requests for in-cell feeding and a wedge pillow. Rather, defendants seek summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies as to his claims that Dr. Smith and Dr. Horowitz failed to timely diagnose plaintiff's cancer and improperly delayed plaintiff's surgery, and Dr. Soltanian-Zadeh refused to order J-tube feeding. In response, plaintiff filed his own motion for summary judgment, a "final statement," and an unauthorized sur-reply. As discussed below, the undersigned recommends that defendants' motion be granted in part, plaintiff's motion for summary judgment on the merits be dismissed without prejudice, and this action proceed solely on plaintiff's claims against Dr. Smith and Dr.

Horowitz.

I. Plaintiff's Operative Pleading

This action proceeds on plaintiff's October 25, 2017 verified amended complaint, in which plaintiff alleges the following. On February 4, 2015, plaintiff received a diagnosis of "indefinite low grade dysplasia. A follow-up examination is recommended." (ECF No. 9 at 7.) Five months passed without such examination or further testing, and on June 30, 2015, plaintiff was diagnosed with adenocarcinoma. Such delay by defendants Dr. Horowitz and Dr. Smith, as well as their failure to follow the medical recommendation, allowed plaintiff's condition to develop into esophageal cancer, which necessitated surgery to remove parts of plaintiff's stomach and esophagus. Dr. Horowitz and Dr. Smith were aware that plaintiff's brother also had esophageal adenocarcinoma and died of the disorder in 1999 at age 52. Plaintiff's surgery was delayed another four months, allowing further development of the cancer. On October 22, 2015, plaintiff had surgery for the removal of his esophagus and parts of his stomach and small intestines. Plaintiff contends that had the cancer been diagnosed or treated earlier, he could have received less invasive medical treatment such as endoscopic resection, or radiofrequency or thermal ablation. (ECF No. 9 at 6-16, 18.)

Once plaintiff returned to Mule Creek State Prison ("MCSP") following his surgery at an outside hospital, Dr. Soltanian-Zadeh was the primary care physician at the MCSP infirmary from November 2 through 30, 2015. (ECF No. 9 at 16.) Dr. Soltanian-Zadeh refused to order medically necessary J-tube feeding, instead ordering syringe-forced feeding which overloaded plaintiff's recently re-sectioned abdominal tract, causing projectile vomiting, forceful diarrhea, dizziness, and massive pain (also known as "dumping syndrome"), allegedly claiming "we don't have the equipment here for that." (ECF No. 9 at 16.) Dr. Soltanian-Zadeh should have sent plaintiff to a hospital that had the proper equipment to avoid subjecting plaintiff to the excruciatingly painful dumping syndrome "that lasted for many hours each feeding over a ten day period." (ECF No. 9 at 17-18.)

Plaintiff also alleges that following the surgery, Dr. Horowitz and Dr. Smith denied plaintiff in-cell feeding and a wedge pillow. (ECF No. 9 at 21-22; 22-23.)

## II. Plaintiff's Motion for Summary Judgment

On January 2, 2019, plaintiff filed a document entitled, "Motion for Summary Judgment, FRCP Rule 56, Local Rule 260." (ECF No. 46.) However, as pointed out by defendants, plaintiff failed to provide a statement of undisputed facts, an affidavit or declaration in support, did not identify material facts in his motion, and cited no relevant portions of any pleading, affidavit, deposition, or other discovery response upon which plaintiff relies. Despite referring to multiple exhibits by specific number, plaintiff failed to file or serve any exhibit with his motion.[1] In his motion, plaintiff raises multiple arguments concerning exhaustion, apparently in response to defendants' motion, but also argues that he should be granted summary judgment on the merits of his claims.

The undersigned construes plaintiff's motion as an opposition to defendants' motion for summary judgment regarding exhaustion. To the extent plaintiff contends he is entitled to summary judgment on the merits of his claims as a matter of law, his motion is wholly unsupported by competent evidence and should be denied without prejudice to its renewal following resolution of defendants' motion for summary judgment on the issue of exhaustion.

## III. Plaintiff's Sur-reply

Defendants request that plaintiff's sur-reply regarding the motion (ECF No. 52) be stricken. Rule 56 of the Federal Rules of Civil Procedure does not authorize the filing of a sur-reply. This court's local rules do not provide for the filing of sur-replies regarding motions. See Local Rule 230(1). However, when a party has raised new arguments or presented new evidence

---

[1] The court's docket reflects that on October 3, 2018, plaintiff filed 550 pages of exhibits with a cover sheet entitled "Exhibits 11 to 16." (ECF No. 34.) Such exhibits were not filed in connection with a motion or opposition, and were filed before defendants filed their motion on November 7, 2018. Plaintiff's subsequent motion for summary judgment does not reference the filing of such exhibits, or ask defendants or the court to refer to the prior submission; thus, any such connection is unclear. In any event, defendants were not properly put on notice of such reference if that was what plaintiff intended. Nevertheless, and in an abundance of caution, the undersigned has reviewed the exhibits to determine whether plaintiff provided an administrative appeal that would have exhausted any of the three claims at issue in defendants' motion for summary judgment. But plaintiff provided the same appeals upon which defendants rely in connection to the claims at issue in such motion. Plaintiff also provided multiple medical records that are not relevant to the issue of exhaustion of administrative remedies. (ECF No. 34, *passim*.)

in a reply to an opposition, the court may permit the other party to counter the new arguments or evidence.  El Pollo Loco v. Hashim, 316 F.3d 1032, 1040-41 (9th Cir. 2003).

Defendants' reply addressed plaintiff's arguments in opposition to the motion for summary judgment regarding exhaustion; however, defendants cited, for the first time, Ross v. Blake, 136 S. Ct. 1850, 1853-54 (2016), and argued that none of the Ross exceptions apply. (ECF No. 51 at 2-3.)  Thus, the court finds it appropriate to consider plaintiff's sur-reply in which plaintiff addressed, for the first time, the application of Ross.  Defendants' motion to strike the sur-reply (ECF No. 53) is denied.

Moreover, because plaintiff filed a counter-motion, the undersigned considers plaintiff's "final statement" (ECF No. 50) as his reply to defendants' opposition to plaintiff's counter-motion.  Even though it was untimely,[2] the undersigned finds good cause to grant plaintiff an extension of time, *nunc pro tunc*, and the reply is deemed timely-filed.  The court acknowledges that plaintiff argued both the merits of his claims and the exhaustion of administrative remedies in his "final statement," but in an abundance of caution, the court has considered plaintiff's arguments concerning exhaustion in connection with defendants' motion.

IV.  Defendants' Motion for Summary Judgment

A.  The Parties' Positions

1.  Defendants' Motion

Defendants contend that plaintiff failed to exhaust his administrative remedies as to his claims that Dr. Smith and Dr. Horowitz did not timely diagnose plaintiff's cancer and improperly delayed plaintiff's surgery, and Dr. Soltanian-Zadeh refused to order drip feeding.  Defendants submitted evidence that plaintiff failed to appeal his claims as to Dr. Smith and Dr. Horowitz through the third level of review, and plaintiff filed no administrative appeal as to plaintiff's drip feeding claim against Dr. Soltanian-Zadeh.

*/////*

---

[2]  Under Local Rule 230(l), plaintiff's reply was due seven days after defendants filed their opposition.  Id.  Plaintiff's "final statement" was signed on February 18, 2019, thirty days after defendants filed their opposition.  In the future, plaintiff is cautioned that he should seek an extension of time if he cannot meet court deadlines.

4

2.  Plaintiff's Opposition and Reply

Initially, the court notes that plaintiff has largely failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . ." Plaintiff has also failed to timely file a separate document disputing defendants' statement of undisputed facts that fully complies with Local Rule 260(b).

However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). That said, an inmate's choice to proceed without counsel "is less than voluntary" and is subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986).  Therefore, prisoners should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

Further, the Ninth Circuit has cautioned that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor . . . . [his] version of any disputed issue of fact is thus presumed correct." Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992) (internal quotation marks omitted).  Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However, only those assertions which have evidentiary support in the record are considered.[3]

---

[3]  Plaintiff submitted no evidence in support of his opposition, and did not file his own declaration as to pertinent facts concerning his efforts to exhaust administrative remedies.  Also, none of his responsive filings are signed under penalty of perjury.  (ECF Nos. 46 (opposition), 50 (reply), 52 (sur-reply).)

In his opposition, plaintiff generally complains that the administrative appeals process of the California Department of Corrections and Rehabilitation ("CDCR) is futile because of delays and how long it takes to complete three levels of review. He argues that he should be excused from exhaustion because administrative remedies were not available.

Plaintiff contends that the unique circumstances of his case made the filing of a 602 appeal regarding the repeated and unnecessary delays in medical treatment moot because plaintiff was repeatedly told by medical staff that he would be going out for surgery, citing exhibits he did not provide in connection with this motion. (ECF No. 46 at 1.) Plaintiff claims that his appeal log no. 15047222 became moot because he had surgery before he could send his appeal for third level review.[4] Plaintiff states that he did file appeals as to the delay in surgery, but was unable to complete the third level review "due to the timing by CDCR reviewers." (ECF No. 46 at 1.)

With regard to Dr. Soltanian-Zadeh, plaintiff contends that while being improperly fed by syringe into his small intestines, he was suffering horrible, excruciating distress, including pain, vomiting, severe weight loss, and nausea, and was transferred six times in four months, rendering any available administrative remedies unavailable. (ECF No. 46 at 3.) Plaintiff recounts the following transfers:

        a. To UCD for the esophagectomy on October 22, 2015.

        b. Returned to MCSP on November 2, 2015.

        c. To UCD for stabilization on November 27, 2015.

        d. Returned to MCSP on November 30, 2015.

        e. Transferred to High Desert State Prison on December 1, 2015.

        f. Transferred to California Medical Center in Vacaville on December 31, 2015.

        g. Returned to MCSP on February 22, 2016.

(ECF No. 46 at 3-4.) Plaintiff concedes that the transfers to UCD were not punitive, but claims his second hospitalization was due to his deterioration caused by Dr. Soltanian-Zadeh's failure to order the proper feeding procedure. (ECF No. 46 at 4.)

_____

[4] Plaintiff also references a CDC 7362 #2213331, but fails to provide such document. (ECF No. 46 at 1.)

6

In his "Final Statement," plaintiff argues that all of his past appeals demonstrate that the CDCR appeals process "is no more than a pro-forma and substanceless [sic] form of documentary subterfuge," and is "futile and irrelevant." (ECF No. 50 at 2.) He states it can take more than nine months to take an appeal through the third level of review. Given such delay, plaintiff argues it was futile for him to file an appeal as to the J-tube feeding. (ECF No. 50 at 2.) Plaintiff argues that his subsequent transfers then made it "effectively impossible" to file an appeal within the filing deadlines. (Id. at 3.) Plaintiff argues that the delays in receiving appeal responses, in addition to CDCR rarely granting any of the appeals, demonstrates there is no viable administrative appeal process available. (Id. at 4.)

### 3. Defendants' Reply

In their reply, defendants argue that plaintiff's general criticism of the CDCR's appeals process is unavailing because the appeals procedure was available to plaintiff, and it is undisputed that plaintiff used it for two of his claims in this action. Defendants dispute that plaintiff's transfers made it impossible for him to file appeals. Defendants argue that plaintiff is not entitled to an exception to the exhaustion requirement because there is no evidence that the inmate grievance system at MCSP was a simple dead end or incapable of use. It is undisputed that both MCSP and CDCR at all times had an administrative appeal process available for inmates to submit medical and non-medical appeals, and the process includes a comprehensive electronic database to log and track inmate appeals at all levels. (ECF No. 51 at 3.) Indeed, plaintiff routinely used the appeals process at MCSP, submitting more than fifteen health care appeals since 2014, and received relief or third level appeal responses on multiple occasions. (ECF No. 51 at 3, citing ECF No. 38-4 at 3, 7-15.)

Defendants point out that plaintiff does not argue that he was physically unable to prepare an appeal, or did not have access to the appeals process at any time, but that even if he had, the appeals process allows additional time for such circumstances. (ECF No. 51 at 3.) For example, a late appeal may be accepted where the inmate was medically incapacitated and unable to file. Cal. Code Regs. tit. 15, § 3084.6(a)(4).

As to plaintiff's J-tube feeding claim, it is undisputed that plaintiff did not submit an

appeal on this issue.  Yet, plaintiff submitted many appeals on other issues.  (UDF Nos. 6, 7, 10, 11, 12, 13; see also ECF No. 38-4 at 7-15 (grievance history printout).)  Thus, defendants argue it is clear that plaintiff failed to use the administrative appeal process available to him to exhaust his claim as to Dr. Soltanian-Zadeh.

Finally, defendants argue that it is undisputed that plaintiff did file an appeal as to the alleged delayed cancer diagnosis and treatment claim, but he failed to pursue such appeal through the third level of review.  (ECF No. 51 at 4.)  Following the second rejection of this appeal, plaintiff submitted no further appeals concerning such issues.  Plaintiff failed to address the rejection of this appeal, and does not explain why he did not comply with the instructions included in the rejection notice.  Moreover, this appeal was rejected in January and February of 2017, long after plaintiff's cancer surgery in 2015, and after he was transferred back to MCSP in early 2016.

#### 4. Plaintiff's Sur-Reply

In his sur-reply, plaintiff argues that the administrative appeal process is ineffective, and is futile given the delays.  Plaintiff claims that when an inmate is transferred, it can take months for mail to catch up with the inmate.  When an inmate is hospitalized in an outside hospital, he is not allowed any correspondence, including legal mail.  Plaintiff argues that simply because an appeal process is available does not make it effective.  (ECF No. 52 at 3.)  Plaintiff argues that he was unable to use the process for the 27 days he was being force fed by Dr. Soltanian-Zadeh.  Finally, plaintiff claims that any administrative appeal about the delay in surgery would have been after the fact, and would not have gotten him an earlier surgery, particularly where it takes months and months to get a final decision.  (ECF No. 52 at 4.)

### B. Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

9

a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on November 7, 2018 (ECF No. 38-2), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).[5]

C. Undisputed Facts ("UDF")[6]

1. For non-medical appeals, the CDCR uses a program database called the Inmate Appeals Tracking System ("IATS") to electronically log and track inmate appeals through all levels of review. (ECF Nos. 38-5 at 2; 38-6 at 2.)

2. For medical (health care) appeals, CDCR's Health Care Correspondence and Appeals Branch ("HCCAB") uses a program database known as the Health Care Appeals and Risk Tracking System ("HCARTS") to electronically log and track inmate health care appeals that are processed by the institution, and at the final level of review by HCCAB, first and second level appeals are processed by staff at the institutions, and the final third level appeals are processed by HCCAB staff at headquarters. (ECF No. 38-4 at 2.)

3. At all relevant times, CDCR and MCSP had an administrative process available for inmates to submit medical and non-medical appeals. (ECF Nos. 38-5 at 2; 38-6 at 2; 38-4 at 2.)

4. The MCSP Appeals Coordinator's Office receives, reviews, and tracks all non-medical inmate appeals submitted for first and second-level review concerning events at MCSP. First and second level appeals accepted at MCSP are assigned a log number in the institution's IATS system ("IATS I & II"). (ECF No. 38-6 at 1-2.)

5. CDCR's Office of Appeals ("OOA") receives, reviews, and maintains inmates' non-medical appeals accepted at the third and final level of administrative review. When OOA receives an appeal, it is assigned a third-level tracking number and entered into OOA's computer tracking system ("IATS III"). (ECF No. 38-5 at 1-2.)

6. On December 26, 2016, plaintiff signed an inmate appeal log no. MCSP HC 17050310 stating:

////

---

[5] In addition to such contemporaneous notice, the court provided plaintiff advance notice of the Rand requirements on January 2, 2018. (ECF No. 15 at 3-4, 6.) Also, in their reply, defendants noted plaintiff's failure to file a declaration as evidence of any fact. (ECF No. 51 at 3 n.2).

[6] For purposes of summary judgment, the undersigned finds these facts are undisputed, unless otherwise indicated.

It has now come to my attention about the careless impedences [sic] I've faced with medical staff, their delays and poor decision-making which continues to effect my daily living & the possibly even reduced my overall survival. Everything that I've needed before and after my esophagectomy -- a major life-altering surgery -- has been responded by the medical staff with: negation, inactivity or delay. This adds pain, anguish and stress unnecessary because seemingly to get them to act in my case it requires medical 602s which only adds to more delays. (Wedge pillow, cell feed, medical records, etc.) I found out in October 2016 that had the staff acted promptly in the first place in dealing with my low grade Dysplasia diagnosis, I might not have had to go through the extensive surgery ordered with altered life hardships. (vomiting, regurgitation, dumping syndrome, bowel habit changes, low physical endurance, abdominal hernia . . .) I then verified with the concerns regarding the delays in follow-up and treatments of Esophageal Dysplasia.

Action requested:   1) Explanation for the persistent negations, inactivities [sic], and delays over the course of my case during the nearly two year period regarding my Esophageal Low Grade Dysplasia to the present date.   2) No retaliation for this filing. Medical can look up these medical records as it takes many months for [plaintiff] to obtain medical records. . .

(ECF No. 38-4 at 3, 19-21.) On January 12, 2017, plaintiff's appeal was rejected at the first level of review and sent to plaintiff. The rejection notice stated that the appeal did not specify a requested action, and was incomplete:

You are requesting an explanation regarding your health care treatment, but you have failed to show when you previously requested to be seen and were denied.

Please add additional information on the CDCR 602A Form and resubmit your appeal. If you have not yet requested to be seen, please submit a CDCR 7362 Form to the clinic.

(ECF No. 38-4 at 18.) The rejection notice advised plaintiff that he could not appeal a rejected appeal but should take the necessary corrective action and resubmit the appeal within 30 calendar days. (ECF No. 38-4 at 3, 18.)

7.  Plaintiff resubmitted appeal log no. MCSP HC 17050310, and included the following:

3) CLARIFICATION:   Request explanations for delays in my inseparable care, CT scans, Pet scans, and close follow-ups from 1-29-15 (Dx (["diagnosis"]): dysplasia) to 6-30-15 (Dx: Ominous Cancer), to Oct. 22, 2015 (esophagectomy) to surgical/oncological follow-ups up to Nov./Dec. 28.

(ECF No. 38-4 at 21.) On February 6, 2017, plaintiff's appeal was rejected again at the first level

12

of review, for the following reasons:

> Anticipated Action: CCR, Title 15, Section 3084.6(b)(1), "The appeal concerns an anticipated action or decision."
>
> - You have requested an explanation regarding your health care treatment, but failed to state when you had previously requested this information from medical staff and were denied.

(ECF No. 38-4 at 17.) The rejection notice advised plaintiff that he could not appeal a rejected appeal but should take the necessary corrective action and resubmit the appeal within 30 calendar days. (ECF No. 38-4 at 3, 17.)

8. No further submissions of appeal log no. MCSP HC 17050310 were received by the MCSP health care appeals office or CDCR's HCCAB. (ECF No. 38-4 at 4.)

9. Other than appeal log no. MCSP HC 17050310, no appeals concerning claims of delay in diagnosing his esophageal cancer were received from plaintiff by the MCSP health care appeals office or CDCR's HCCAB. (ECF No. 38-4 at 4.)

10. On August 13, 2015, plaintiff signed appeal log no. MCSP HC 15047179, received at the first level of review on August 14, 2015. In this appeal, plaintiff wrote:

> On August 8, 2015, at CPC RN Clinic I was notified by the nurse that I was going out for procedure. I asked if this would be a pre-surgery consultation or right into surgery? She said the doctor would talk to me (not answering my question). I asked, besides just resecting the 2 cm of cancer were they also going to repair the underlying cause. Hiatal hernia, lower esophageal sphincter and remove the Barrett's? when I said I needed these questions addressed, the nurse immediately asked if I was refusing the surgery. I said no. I am absolutely not refusing the surgery. That simply I need this surgery to save my life but want these questions answered so I know what is happening.
>
> On August 11, 2015, I was seen by Dr. Jackson who asked why I had "refused" this surgery on Monday. When I explained to him what took place, and that I was not even aware of the transport on Monday, he did not seem to have any answers for me.
>
> Action requested: Reschedule this surgery immediately and explain why the underlying causes. Hiatal hernia, lower esophageal sphincter (LES) and Barrett's are not being addressed.

(ECF No. 38-4 at 28-29.) In the first level appeal response, plaintiff's issues were identified as disagreement with treatment by the doctor and requesting esophagus surgery be rescheduled.

(ECF No. 38-4 at 26.)  Such appeal was partially granted at the first level of review, in that he was interviewed on September 11, 2015, by MCSP staff physician Dr. Chau who noted:   (a) plaintiff's history of Barrett esophagus with adenocarcinoma, (b) on September 2, 2015, plaintiff was seen by UCD oncology, who recommended plaintiff receive a chest CT and a cardiac evaluation; (c) on September 3, 2015, plaintiff was seen by his primary care physician for follow-up; and (d) a referral was previously submitted for the chest CT and cardiac work-up.  (ECF No. 38-4 at 27.)  Dr. Chau stated that plaintiff would be seen by a UC Davis oncologist for a follow-up appointment to discuss any surgery options after these tests were completed.  (Id.)  Such first level response sent to plaintiff was dated September 25, 2015, and advised plaintiff that he could submit the appeal for a second level of review if desired.  (ECF No. 38-4 at 26-27.)  No further submissions were received for appeal log no. MCSP HC 15047179 by the MCSP health care appeals office or CDCR's HCCAB.  (ECF No. 38-4 at 4, 25-31.)

11.  On August 21, 2015, plaintiff signed appeal log no. MCSP HC 15047222, received at the first level of review on August 24, 2015.  Plaintiff's stated purpose was "emergency surgery -- second attempt," and explained that on August 10, 2015, his cancer surgery at UCD was "erroneously cancelled, 'as refused,' by MCSP staff.  See emergency appeal.  MCSP HC 15047179 for more details."  (ECF No. 38-4 at 35.)  Plaintiff asked that the cancer surgery be rescheduled at UCD "asap," and requested that the UCD surgeon and oncologist be advised that the two no show surgeries were not plaintiff's fault.  (Id.)  Plaintiff explained that on August 20, 2015, he was taken to the wrong hospital, San Joaquin Hospital in Stockton, rather than UCD.  (ECF No. 38-4 at 37.)  Similar to the August 13, 2015 appeal, such appeal was partially granted at the first level of review, in that he was interviewed on September 11, 2015, by MCSP staff physician Dr. Chau who noted:  (a) plaintiff's history of Barrett esophagus with adenocarcinoma, (b) on September 2, 2015, plaintiff was seen by UCD oncology, who recommended plaintiff receive a chest CT and a cardiac evaluation; (c) on September 3, 2015, plaintiff was seen by his primary care physician for follow-up; and (d) a referral was previously submitted for the chest CT and cardiac work-up.  (ECF No. 38-4 at 27.)  Dr. Chau stated that plaintiff's appeal was partially granted inasmuch as plaintiff was previously seen and a CT of the chest and cardiac work-up was

ordered, and plaintiff would be seen by UCD oncology for follow-up after such tests were completed to discuss surgery options. (ECF No. 38-04 at 34.) Such first level response sent to plaintiff was dated October 2, 2015, and advised plaintiff that he could submit the appeal for a second level of review if desired. (ECF No. 38-4 at 33-34.) No further submissions were received for appeal log no. MCSP HC 15047222. (ECF No. 38-4 at 4.)

12. Plaintiff did not submit any appeals on the issue of being fed liquids by syringe into his feeding tube instead of a drip feeding device. (ECF No. 38-4 at 5.)

13. Plaintiff submitted health care appeal log no. MCSP HC 16049505, which was received for first level review on September 22, 2016. (ECF No. 38-4 at 4-5, 43-66.) Such appeal requested approval for in-cell feedings. The appeal was denied in a third level decision dated April 10, 2017, exhausting plaintiff's administrative remedies on the issue of in-cell feeding. The third level decision noted that plaintiff's in-cell feeding had been extended for an additional three months, but that it would not be further extended because there was no further medical indication for in-cell feeding.

14. Plaintiff submitted health care appeal, log no. MCSP HC 16048591, which was received for first level review on May 19, 2016. (ECF No. 38-4 at 5, 68-108.) The appeal requested he receive four pillows, or be allowed to purchase a wedge pillow. The appeal was denied in a third level decision dated January 5, 2017, exhausting plaintiff's administrative remedies on the issue of receiving a wedge pillow. The third level decision noted that there was no documentation that plaintiff's primary care provider had determined a wedge pillow was medically necessary.

15. Plaintiff submitted no appeals on issues that are the subject of his claims in this lawsuit, other than those described in undisputed facts 6-11, 13 and 14, set forth above. (ECF No. 38-4 at 5, 38-5 at 3, 38-6 at 2-3.)

16. A late appeal may be accepted where the inmate was medically incapacitated and unable to file. Cal. Code Regs. tit. 15, § 3084.6(a)(4).

////

////

D.  Legal Standards for Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.§ 1997e(a).  In other words, prisoners are required to exhaust the available remedies prior to filing "any action."  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

Exhaustion is mandatory regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint."  Booth v. Churner, 532 U.S. 731, 736, 741 (2001).  "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  Ross, 136 S. Ct. at 1859 (quoting Booth, 532 U.S. 731, 738 (2001)).

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Ross, 136 S. Ct. at 1859.  These circumstances include:  "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59).

The Ninth Circuit has characterized the list in Ross as "non-exhaustive."  Andres, 867 F.3d at 1078.  "[T]he PLRA does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'"  Andres, 867 F.3d at 1078, quoting Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) ("the Warden's mistake rendered Nunez's administrative remedies effectively unavailable, and . . . his failure to exhaust them is excused.");

see also <u>McBride v. Lopez</u>, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable."); <u>Reyes v. Smith</u>, 810 F.3d 654, 658, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

Finally, the Ninth Circuit has held that a prison's failure to follow its own procedures creates an exception to the exhaustion requirement. <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 823 (9th Cir. 2010). In order to "fall within this exception," a prisoner "must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." <u>Id.</u>, 623 F.3d at 823-24.

E. <u>Discussion</u>

1. <u>Did plaintiff exhaust?</u>

Here, it is undisputed that (a) CDCR generally has a grievance process that plaintiff used to obtain third level review decisions on at least two of his claims; (b) plaintiff did not receive a third level review on the merits of his claims that Dr. Smith and Dr. Horowitz failed to timely diagnose plaintiff's cancer and improperly delayed plaintiff's surgery; and (c) plaintiff failed to file a grievance challenging Dr. Soltanian-Zadeh's refusal to order J-tube feeding. Thus, defendants have demonstrated the absence of third level reviews on such claims.

2. <u>Were remedies available?</u>

a. <u>Appeal Nos. MCSP HC 15047179 or MCSP HC 15047222</u>

To the extent plaintiff argues that these appeals exhaust his claims concerning the delayed diagnosis and treatment of his cancer because he was unable to complete the exhaustion process prior to his cancer surgery, such argument fails for the following reasons.

Both of these appeals sought the rescheduling of plaintiff's surgery and did not address the delay in diagnosing the cancer. Plaintiff sought an emergency rescheduling of plaintiff's

surgery, but also sought information concerning treatment of his other health issues, such as his hernia, suggesting plaintiff was seeking additional information in order to make an informed decision whether to consent to such a radical surgery. But there is nothing in either appeal that suggested plaintiff was challenging the delay in diagnosing the cancer. Thus, neither appeal would serve to exhaust plaintiff's claim concerning the delay in cancer diagnosis, failing the first prong of Sapp. 623 F.3d 823-24.

Neither appeal specifically challenged a delay in scheduling the surgery. The undersigned has considered whether the court should liberally construe such appeals as at least challenging the delay from August 8, 2015, until October 22, 2015, when plaintiff finally received the surgery. But plaintiff was not specifically challenging the delay in receiving the surgery; rather, plaintiff was contesting prison staff's claim that plaintiff had refused the surgery on two separate occasions, and attempting to get questions answered, and to get the surgery rescheduled. In addition to plaintiff not mentioning either Dr. Smith or Dr. Horowitz, admittedly not always required,[7] plaintiff does not allege that any medical doctor took some action or failed to take some action in connection with plaintiff's surgery. Rather, plaintiff stated that on August 11, 2015, he saw Dr. Jackson, who had no answers for plaintiff's claim that he was unaware of the transport on August 8, 2015, but there is no allegation that Dr. Jackson was involved in scheduling or rescheduling plaintiff's surgery. Rather, in appeal log no. MCSP HC 15047179, plaintiff mentions a nurse at the clinic on August 8, 2015, in connection with plaintiff's alleged refusal. In appeal log no. MCSP HC 15047222, plaintiff claims that on August 10, 2015, his cancer surgery was cancelled "as refused" by "MCSP staff," and that on August 20, 2015, plaintiff was taken to

---

[7] See Jones, 549 U.S. at 219 (("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (primary purpose of an administrative appeal is to alert the prison to a problem and provide an opportunity for a solution, and such appeal is sufficient if it alerts prison staff to the wrong alleged); Reyes, 810 F.3d at 659 ("The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." (citation and quotations omitted); King v. Biter, 754 F. App'x 612, 613 (9th Cir. 2019) (King's "grievance put prison officials on notice that he was attacked as a result of information in his file, referenced his prior grievances where he sought to have this information removed, and included his request for a classification hearing.").

San Joaquin Hospital by mistake -- plaintiff was told by guards that "scheduling" sent him to the wrong hospital. None of these allegations can be liberally construed as plaintiff complaining that Dr. Smith or Dr. Horowitz improperly delayed plaintiff's surgery.

Therefore, the undersigned finds that appeal log nos. MCSP HC 15047179 and MCSP HC 15047222 do not exhaust plaintiff's claims that Dr. Smith or Dr. Horowitz failed to timely diagnose plaintiff's cancer or improperly delayed plaintiff's surgery.

### b. Appeal No. MCSP HC 17050310

It is undisputed that plaintiff failed to obtain a third level appeal decision from appeal No. MCSP HC 17050310. But after considering defendants' arguments and reviewing the evidence, the undersigned finds that defendants have not met their burden of showing that plaintiff's remedies were available in light of an improper second rejection.

Defendants argue that such appeal was properly rejected twice, yet plaintiff made no further submission after the second rejection. In their reply, defendants point out that plaintiff failed to explain why he did not comply with the second rejection notice instructions, and that neither rejection was pending during the times plaintiff was in the hospital or transferred to different prisons.[8] But plaintiff argues that his appeal was "denied with questionable reasoning" (ECF No. 46 at 2),[9] and that the second rejection constitutes a dead-end under Ross. (ECF No. 52 at 3.) Defendants counter that none of the exceptions described in Ross apply here. Defendants

---

[8] Indeed, appeal MCSP HC 17050310 was not rejected as untimely, despite its first submission on December 26, 2016, or its subsequent re-submission, even though both were submitted more than thirty days after plaintiff's October 22, 2015 surgery. But in this appeal, plaintiff stated that he only discovered in October 2016 that had medical staff acted promptly, plaintiff might have avoided such extensive surgery. It is undisputed that the CDCR provides exceptions for the submission of late appeals. Cal. Code Regs. tit. 15, § 3084.6(a)(4).

[9] Plaintiff also argues that he was not required to exhaust his administrative remedies because "the administrative process is wholly ineffective, non-viable, and futile," relying heavily on McCarthy v. Madigan, 503 U.S. 140 (1992). (ECF No. 46 at 2; see also ECF No. 50 at 2-3 ("futile").) But McCarthy was superseded by 42 U.S.C. § 1997e(a) (the "PLRA"), as well as subsequent Supreme Court decisions. Woodford, 548 U.S. at 89 (42 U.S.C. § 1997e(a) requires "proper" exhaustion); Booth, 532 U.S. at 738 ("we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.") Thus, plaintiff's criticisms as to the overall appeals process are unavailing.

argue that the evidence demonstrates that the administrative process was available at MCSP and in the CDCR generally, and plaintiff successfully availed himself of the process by filing more than fifteen health care appeals at MCSP since 2014, receiving relief and third level review responses.

"[A] cancellation or rejection decision does not exhaust administrative remedies." Id. § 3084.1(b). Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a). However, "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Andres, 867 F.3d at 1079.

Defendants' argument that plaintiff successfully pursued other appeals is unavailing because the court "consider[s] each screening in turn." Sapp, 623 F.3d at 825. Here, the issue is whether plaintiff's appeal was properly rejected. Defendants cite no legal authority demonstrating that the regulation cited in the second rejection was proper and appropriate under the circumstances.

Again, the appeal response in the second rejection notice was:

> Anticipated Action: CCR, Title 15, Section 3084.6(b)(1), "The appeal concerns an anticipated action or decision."
>
> - You have requested an explanation regarding your health care treatment, but failed to state when you had previously requested this information from medical staff and were denied.

(ECF No. 38-4 at 17.) But plaintiff did not appeal an "anticipated" action; rather, he was appealing delays in care already provided. In his appeal, plaintiff stated that he had sustained "persistent negations, inactivities, and delays over the course of his care," and that medical staff had "responded with: negation, inactivity or delay," and that he had to file administrative appeals to get them to act. (ECF No. 38-4 at 21.) In his re-submission, he clarified that he was seeking explanations for the delays from January 29, 2015, to June 30, 2015, to October 22, 2015, when

20

he had his esophagectomy, to follow-ups to December 2016. Plaintiff stated that he only discovered in October of 2016 that had medical staff acted promptly in dealing with plaintiff's low grade diagnosis, he might not have had to undergo the extensive surgery and its life-altering consequences. Thus, reasonably read, in plaintiff's previous requests for care, medical staff persistently negated and delayed such requests over the course of two years, and absent such delays, such extensive surgery might not have been required. In his subsequent clarification, plaintiff provided specific time frames and made clear that the delays had already occurred.

Given the clarity of his appeal, it is perplexing that the responding official rejected the appeal as concerning an "anticipated action or decision," in light of plaintiff's request for answers over past delays. Nowhere in defendants' motion for summary judgment is there an explanation of how plaintiff's appeal challenging delays could violate a rule concerning "anticipated" actions or decisions. Such regulation seems more appropriately applied in situations where inmates are prematurely seeking relief, for example, where an inmate is seeking medical care he had not yet requested. Here, plaintiff was not seeking medical care, as was the case in Sapp, where in one appeal, despite also mentioning malpractice, the inmate complained "he was having 'great difficulty' obtaining medical care," and "prison staff had not followed up on a referral to see an eye specialist." Id. 823 F.3d at 825. Plaintiff presented no such mixed message in his appeal No. MCSP HC 17050310.

Also, the official's finding that plaintiff failed to state when he previously requested this information is inappropriate where plaintiff already claimed he went to medical staff but received only "negations" and "delays." Defendants appear to suggest that in order to seek an explanation for the delay through the appeals process, plaintiff must first request such explanation from medical staff. In light of his appeal claiming he had already approached medical staff yet received only negations and delays, such appeal response is improper. Defendants cite no regulation requiring an inmate to return to medical staff to obtain explanations when the prisoner is attempting to exhaust his administrative remedies concerning delays in medical care already provided. Plaintiff could have included language informing the appeals reviewer that plaintiff was merely exhausting his administrative remedies so that he could proceed to federal court, as

1     some inmates do.  But the regulations do not require a prisoner to do this.

2           Further, this court cannot find that the regulation cited was a "critical procedural rule" as

3     applied in this context.  Proper exhaustion demands compliance with "critical procedural rules

4     because no adjudicative system can function effectively without imposing some orderly structure

5     on the course of its proceedings."  Woodford, 548 U.S. at 90-91.  Applying § 3084.6(b)(1) in this

6     context suggests prison officials used such regulation to avoid addressing plaintiff's claims rather

7     than imposing an orderly structure, and might be viewed as stonewalling.  As such, the second

8     rejection of plaintiff's appeal presented a "dead end" because there was no "anticipated action"

9     left for plaintiff to take, and the reviewing officer appeared "unable or consistently unwilling to

10    provide any relief" by requiring plaintiff on two separate occasions to "show when you

11    previously requested to be seen and were denied."  (ECF No. 38-4 at 17 (second rejection notice);

12    18 (first rejection notice).  See Ross, 136 S. Ct. at 1859.  Indeed, it is unclear what relief remained

13    available given that the delays had already occurred, and the surgery performed.  This court finds

14    that it was improper for the reviewing official to reject plaintiff's appeal No. MCSP HC

15    17050310 by citing a regulation concerning "anticipated" actions or decisions where plaintiff was

16    clearly challenging delays in medical care that had already taken place.  See Sapp, 623 F.3d at

17    823-24 (prisoner may be excused from exhaustion where appeal was screened "for reasons

18    inconsistent with or unsupported by applicable regulations.")  Prison officials may not render the

19    appeals process unavailable through error or misconduct and then take advantage of the prisoner's

20    failure to complete the process.  See Sapp, 623 F.3d at 823 ("If prison officials screen out an

21    inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of

22    appeals, and administrative remedies are therefore plainly unavailable.").  Thus, the undersigned

23    finds that the administrative appeals process was rendered unavailable to plaintiff.

24          Finally, defendants do not dispute that appeal No. MCSP HC 17050310 is the appeal in

25    which plaintiff challenged the delays in his cancer diagnosis and the subsequent surgery.  Indeed,

26    in plaintiff's second submission, he identified with specificity the delays he was challenging.

27    Plaintiff's reference to his dysplasia and cancer diagnoses and subsequent esophagectomy were

28    specific and put prison officials on notice of the wrongful conduct alleged, and plaintiff explained

his delay in filing the appeal. This court finds the appeal was sufficient to put prison officials on notice of plaintiff's challenge to the delays incurred in the diagnosis of the cancer and the subsequent surgery, thus meeting the first prong of Sapp, 623 F.3d 824. See also Jones, 549 U.S. at 219; Griffin, 557 F.3d at 1120; King v. Biter, 754 F. App'x at 613.[10]

Accordingly, defendants' motion for summary judgment should be denied.

### c. Claim against Dr. Soltanian-Zadeh re J-Tube Feeding

Plaintiff's arguments do not excuse his complete failure to file any appeal concerning his claim against Dr. Soltanian-Zadeh. Plaintiff demonstrated knowledge of the grievance process by exhausting, through the third level of review, his claims concerning in-cell feeding and his request for a wedge pillow and attempted to appeal his claim concerning the delays in medical care. It is undisputed that plaintiff did not file an appeal challenging Dr. Soltanian-Zadeh's use of the J-tube feeding process. Indeed, it appears that plaintiff did not even attempt to exhaust his administrative remedies as to such claim because he thought it was futile given the delays inherent in the grievance process. But, plaintiff's subjective belief that the appeals process was futile is not an exception to the exhaustion process. See Booth, 532 U.S. at 741 & n.6 (Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.). Rather, as set forth above, exhaustion is mandatory. To excuse plaintiff's complete failure to appeal a claim he later attempts to challenge in court thwarts the purposes behind the PLRA's exhaustion requirement: to give prison officials "a fair opportunity to correct any claimed deprivation" and the development of "an administrative record supporting the prison's decision." Reyes, 810 F.3d at 658, citing Porter v. Nussle, 534 U.S. 516, 525 (2002).

In his sur-reply, plaintiff now argues, without any supporting evidence, that he was unable to use the appeals process for the 27 days after surgery while he was being force fed. But in his verified pleading, plaintiff declared he was subjected to the forced feeding "over a ten day period." (ECF No. 9 at 17-18.) In addition, plaintiff stated that he "recovered at U.C. Davis in

---

[10] See footnote seven, infra.

less than 2 days." (ECF No. 9 at 20.) It is undisputed that prison regulations provide for the filing of an emergency appeal. Cal. Code Regs. tit. 15, § 3084.9(a). Plaintiff adduced no evidence that he could not file an emergency appeal either during the feeding process, or shortly thereafter. As argued by defendants, plaintiff could have asked for assistance in filing an emergency appeal. Cal. Code Regs. tit. 15 § 3084.1(c) and (e). Even assuming plaintiff was too ill during the ten day feeding process, plaintiff could have filed an appeal after the feeding process ended, or once he "recovered," seeking permission to file a late appeal based on an alleged medical incapacitation. Cal. Code Regs. tit. 15 § 3084.6(a)(4). Plaintiff failed to adduce competent evidence to rebut defendants' evidence that the appeals process was available to raise his claim against Dr. Soltanian-Zadeh.

Finally, even if plaintiff had adduced competent evidence demonstrating his subsequent transfer to a different prison, such transfer, without more, does not excuse him from the exhaustion requirement. A prisoner's transfer to another institution ordinarily does not excuse the failure to exhaust or render the grievance procedure unavailable. Howard v. Baca, 2011 WL 5570086 at *5 (C.D. Cal. Sept. 27, 2011) (Howard's failure to exhaust was not excused because the jail's grievance process was still available to him following his transfer to state prison); Flournoy v. Navarro, 2008 WL 4184650 at *7 (C.D. Cal. Sept. 10, 2008) (jail's grievance process still available despite "the fact that plaintiff was no longer in the Jail's custody at the time she brought this suit."). Here, even if plaintiff was subsequently transferred to different state prisons, it is undisputed that each prison uses the administrative appeal process governed by Title 15 that remained available to plaintiff. Thus, absent competent evidence to the contrary, plaintiff's subsequent transfers to different California state prisons did not excuse him from exhausting his claim as to Dr. Soltanian-Zadeh. See Howse v. Walker, No. Civ. S-06-0331 DFL DAD P, 2007 WL 201161, *4 (E.D. Cal. Jan. 24, 2007) (because both facilities were operated by the Sacramento County Sheriff the court was persuaded that the grievance process was still available to plaintiff).

For all of the above reasons, plaintiff's claim against Dr. Soltanian-Zadeh should be dismissed without prejudice. Jones, 549 U.S. at 223-24 (the proper remedy is dismissal without

prejudice of the portions of the complaint barred by section 1997e(a)).

F. Conclusion re Defendants' Motion

It is undisputed that administrative remedies were available to plaintiff and he used them to exhaust his claims concerning in cell feeding and his requested wedge pillow.

The undersigned finds that administrative remedies were rendered unavailable by prison staff's improper rejection of plaintiff's administrative appeal MCSP HC 17050310 challenging the delay of his cancer diagnosis and the improper delay of plaintiff's surgery.

Further, the undersigned finds that defendants adduced evidence that administrative remedies were available to plaintiff, yet he failed to file any administrative appeal challenging Dr. Soltanian-Zadeh's refusal to order J-tube feeding. Defendants' motion for summary judgment requesting dismissal of such claim should be granted, and Dr. Soltanian-Zadeh should be dismissed from this action.

Accordingly, this action should proceed on plaintiff's claims against defendants Dr. Smith and Dr. Horowitz concerning the delay in diagnosing plaintiff's cancer, the alleged improper delay in providing surgery, the denial of plaintiff's request for in-cell feeding, and the denial of his request for a wedge pillow.

V. Subsequent Filings

On June 3, 2019, plaintiff filed a statement of undisputed facts. On June 10, 2019, defendants filed a motion to stay proceedings on plaintiff's motion for summary judgment and noted plaintiff's statement of undisputed facts is untimely.

Because the undersigned construes plaintiff's motion for summary judgment as his opposition to defendants' motion and recommends denying plaintiff's motion for summary judgment on the merits without prejudice, defendants' motion for stay is unnecessary and is denied. Plaintiff's statement of undisputed facts is untimely and is disregarded. L.R. 230(l).

VI. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's "final statement" (ECF No. 50) is construed as his reply to defendants' opposition, and is deemed timely-filed;

2. Defendants' motion to strike plaintiff's sur-reply (ECF No. 53) is denied;

3. Plaintiff's statement (ECF No. 54) is disregarded as untimely-filed;

4. Defendants' motion (ECF No. 55) is denied without prejudice; and

IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 38) be granted in part and denied in part, as follows:

    a. Defendants' motion be denied as to plaintiff's claims that Dr. Smith and Dr. Horowitz failed to timely diagnose plaintiff's cancer and improperly delayed plaintiff's surgery, and

    b. Defendants' motion be granted as to Dr. Soltanian-Zadeh based on plaintiff's failure to exhaust administrative remedies, and such claim be dismissed without prejudice;

2. Plaintiff's cross-motion for summary judgment on the merits (ECF No. 46) be dismissed without prejudice; and

3. This action be remanded to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 8, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/teno1802.msj