UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Tenore, | No. 2:17-cv-1802-KJM-KJN P |
| Plaintiff, | ORDER |
| v. | |
| E. Horowitz, et al., | |
| Defendants. | |

Michael Tenore, an inmate in Mule Creek State Prison, alleges two doctors on the prison medical staff, Drs. Horowitz and Smith, were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The doctors moved for summary judgment. The motion was referred to the assigned Magistrate Judge under this District's Local Rules and 28 U.S.C. § 636(b)(1)(B), and the Magistrate Judge recommended granting the motion in part. *See* F&Rs, ECF No. 68. The doctors objected to the findings and recommendations; Mr. Tenore did not. *See* ECF No. 71. As discussed below, the court **adopts in part** the findings and recommendations and **grants the motion for summary judgment in part**.

No party objects to the Magistrate Judge's summary of Mr. Tenore's allegations, the evidence, and the undisputed facts, which this court accepts for purposes of this order only.[1] *See*

---

[1] As explained at the conclusion of this order, the court denies summary judgment without prejudice to renewal for some of Mr. Tenore's claims. The court's reliance on the Magistrate

1

F&Rs at 6–11, 16–19.  In short, Mr. Tenore alleges Drs. Horowitz and Smith moved too slowly in referring him for testing and treatment for a condition that eventually developed into esophageal cancer.  As a result of the doctors' delays, Tenore claims, significant portions of his esophagus, stomach, and intestines were removed.  Specialists instructed him to eat five to six small meals a day and to sleep with his head and shoulders elevated to prevent vomiting and reflux.  But he claims Drs. Horowitz and Smith refused to implement these instructions effectively.  Instead of the recommended "wedge pillow," Mr. Tenore sometimes received extra blankets and one or more additional ordinary pillows, which did not always work.  And instead of a permanent order permitting him to eat several small meals in his cell, he was sometimes told to eat in the cantina.

I.  **DISCUSSION**

The court begins with the claims against Dr. Smith.  The only evidence of his involvement in Mr. Tenore's care are records showing he approved Dr. Horowitz's requests for service.  *See id.* at 15–16.  He does not remember Mr. Tenore.  *See id.* at 15.  Nor does any evidence connect Dr. Smith to any adverse decisions about Mr. Tenore's postoperative care.  In short, if this case went to trial, it appears that no evidence could permit a jury to find that Dr. Smith was the cause of any harm to Mr. Tenore.  The court therefore adopts the Magistrate Judge's recommendation to grant summary judgment of the claims against Dr. Smith.  *See* F&Rs at 30.

The claims against Dr. Horowitz present a more difficult question.  She asserts qualified immunity to Mr. Tenore's claims.  To overcome that immunity, Tenore must show (1) "that he suffered a deprivation of a constitutional or statutory right" and (2) "that such right was clearly established at the time of the alleged misconduct."  *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (alterations omitted) (quoting *Taylor v. Barkes*, 575 U.S. 822, 824 (2015) (per curiam)).

Mr. Tenore's § 1983 claims rest on the Eighth Amendment, which is applicable to the states under the Fourteenth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 101–02 (1976).  The Eighth Amendment protects against cruel and unusual punishment.  For many years, the

---

Judge's description of the record as it stands does not preclude the development and citation of other evidence in the future.

1  Supreme Court has held that a doctor's care can be cruel and unusual if the doctor is "deliberately
2  indifferent" to an inmate's "serious" medical needs. *See id.* at 104. A medical need is "serious"
3  if the "failure to treat it will result in 'significant injury or the unnecessary and wanton infliction
4  of pain.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (quoting *Jett v.
5  Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). A doctor is "deliberately indifferent" if he or she
6  "knows of and disregards" the risk. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

7  Dr. Horowitz disputes neither that Mr. Tenore's medical condition was serious nor that the
8  seriousness of his condition was clearly established at the time. She argues her care did not
9  amount to deliberate indifference under clearly established law. "Deliberate indifference is a high
10 legal standard." *Hamby*, 821 F.3d at 1092 (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th
11 Cir. 2004)). The plaintiff must "show that the course of treatment the doctors chose was
12 medically unacceptable under the circumstances and that the defendants chose this course in
13 conscious disregard of an excessive risk to the plaintiff's health." *Id.* (quoting *Snow v. McDaniel*,
14 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta*, 744 F.3d at
15 1083)). "[M]edical malpractice or negligence" is not deliberate indifference. *Id.* (quoting
16 *Toguchi*, 391 F.3d at 1060). Differences of opinion among medical professionals or between a
17 doctor and patient do not prove deliberate indifference. *Snow*, 681 F.3d at 987. When this
18 standard is combined with the second part of the test for qualified immunity—clearly established
19 law—the question is this: "viewing the evidence most favorably to [the plaintiff], and given
20 existing case law at that time, was it 'beyond debate' that the prison officials pursued a medically
21 unreasonable course of treatment . . . ?" *Hamby*, 821 F.3d at 1092 (quoting *Mullenix v. Luna*,
22 577 U.S. 7, 12 (2015) (per curiam)).

23 Mr. Tenore asserts deliberate indifference in two respects. First, he claims Dr. Horowitz
24 delayed his care. Second, he claims she did not ensure he could use a wedge pillow and eat five
25 or six small meals per day as the hospital instructed.

26 **A.   Delays in Treatment**

27 In the forty years between the time *Estelle* was decided and Mr. Tenore was treated, the
28 Ninth Circuit has often considered whether a doctor's delays can support a claim of deliberate

3

1    indifference. It has held that delays are cruel and unusual when they are unjustifiably long or left
2    an inmate to suffer needlessly. In *Jett v. Penner*, for example, more than a year had passed after
3    the plaintiff was injured before he was referred to a specialist, and by the time he saw the
4    specialist, nineteen months had passed. 439 F.3d at 1095. Shorter delays amount to deliberate
5    indifference less often. *Hallett v. Morgan* is an example. The plaintiffs argued prison officials
6    were deliberately indifferent to their dental health because wait times to see a dentist lasted up to
7    six weeks. *See* 296 F.3d 732, 745–46 (9th Cir. 2002). The delay was many weeks longer for
8    dentures. *See id.* These delays did not support a claim of deliberate indifference. *See id.*[2] But
9    short delays can support claims of deliberate indifference if the delays are unjustified in context.
10   In *Hunt v. Dental Department*, for example, the defendants knew the plaintiff needed dentures,
11   was in severe pain, and was bleeding in his gums and breaking his teeth, but they left him to
12   suffer for weeks. *See* 865 F.2d 198, 200–01 (9th Cir. 1989). In *Clement v. Gomez*, prison guards
13   had withheld showers and medical attention for only four hours. *See* 298 F.3d 898, 905 (9th Cir.
14   2002). But the need for decisive action was obvious: the air was thick with pepper spray; guards
15   and prisoners alike were coughing and gagging; inmates were asking for help, struggling to
16   breathe, and in pain. *See id.*

17        In sum, in evaluating delays in care, deliberate indifferent depends heavily on the context
18   of the plaintiffs' claims. What is the plaintiff's condition? What did the defendants know? How
19   long did they know it? What treatment is so necessary for a person in the plaintiff's position that
20   a delay of that treatment would be so unreasonable that the treating physician would not enjoy
21   qualified immunity? When does a delay become unreasonable? Answering these questions may
22   indeed be possible only with the help of an experienced and trained medical expert. *See Hamby*,
23   821 F.3d at 1093–94 (discussing opinions of plaintiff's expert witness).

24        The Magistrate Judge's recommendation in this case underscores the importance of
25   evidence and context. The Magistrate Judge recommends denying qualified immunity for delays

---

[2] The doctors also cite the Ninth Circuit's unpublished decision in *Lopez v. Tell*, No. 04-55872, 137 F. App'x 36 (9th Cir. 2005). *See, e.g.*, Objections at 10–11. The court has disregarded the citation. Ninth Circuit Rule 36-3(c) prohibits citations of unpublished decisions issued before January 1, 2007 with limited exceptions not relevant here.

4

in the first part of 2015, citing Mr. Tenore's family history of cancer in the digestive tract. *See* F&Rs at 11–12. In the Magistrate Judge's view, that family history should have put Dr. Horowitz on notice of how urgent Mr. Tenore's condition was, so her decision not to move quickly from the very beginning was deliberately indifferent. *See id.* Unfortunately, the record contains no expert testimony to assist the court in deciding whether and how Dr. Horowitz should have weighed Mr. Tenore's family history of cancer. The undeveloped record may be a result of Mr. Tenore's pro se status. Appointed counsel may have cultivated evidence and retained an expert to offer an opinion about whether a family history of cancer should have put Dr. Horowitz on notice.

This difficult factual and legal context, uncertainty about the complex and lengthy record, the absence of potentially crucial expert opinions, and Mr. Tenore's pro se status all prevent the court from determining (1) whether a jury could agree that Mr. Tenore was subjected to cruel and unusual punishment and (2) whether it is "'beyond debate' that [Dr. Horowitz] pursued a medically unreasonable course of treatment" by delaying cancer testing to a man with a worrisome family history. *Hamby*, 821 F.3d at 1092 (quoting *Mullenix*, 136 S. Ct. at 309). Dr. Horowitz's "entitlement to qualified immunity" therefore "depends on the resolution of disputed issues of fact in [her] favor, and against" Mr. Tenore, so "summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003).

The court is also mindful of the Supreme Court's expectation that district courts act "with caution in granting summary judgment," and have authority "to deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001); *United States v. Honeywell Int'l, Inc.*, 542 F. Supp. 2d 1188, 1203 (E.D. Cal. 2008). At the same time, the court recognizes a "full trial" may not be necessary even after the evidence is thoroughly developed, and the Supreme Court has for some time been protective of defendants' qualified immunity, a judge-made doctrine, against not only liability, but a trial itself. *See generally, e.g., Mitchell v. Forsyth*, 472 U.S. 511 (1985).

/////

/////

Taking into account all of the above, the court denies summary judgment of the delayed-care claims against Dr. Horowitz without prejudice to renewal, while appointing counsel for plaintiff as explained at the conclusion of this order.

### B.     Post-Operative Care

Mr. Tenore next claims Dr. Horowitz was deliberately indifferent to his needs after his operation. He received two post-operation instructions: eat five or six smaller meals a day, and elevate his head and shoulders by about thirty degrees when sleeping. *See* F&Rs at 16–17, 20. It is unclear whether these instructions were permanent or temporary; the court assumes a jury could infer they were permanent.

First are Mr. Tenore's post-operative dietary instructions. Dr. Horowitz did not see Mr. Tenore for several months after the surgery. When she did, she ordered staff to deliver meals to Mr. Tenore in his cell so he could eat more often and regain weight, and she referred him to a dietitian. *See* F&Rs at 18. She saw him again a month later and noted he was eating in his cell. *See id.* at 18–19. But after another month, she noted his permission to eat in his cell had been discontinued, and she did not reinstate her previous order; instead she permitted him more time in the cantina. *See id.* at 19. A jury could infer she denied his request for permission to continue eating in his cell. This change in the doctor's orders made eating difficult for Mr. Tenore because the cantina was open only twice a day, *see id.* at 23, although prison records also show staff had offered him food at night, but he declined, *see id.* at 18. Other doctors later approved permanent in-cell meals. *See id.* at 19.

As for the second instruction to elevate the head and shoulders, the prison did not have specialized wedge pillows designed to achieve this purpose, but staff sometimes gave Mr. Tenore extra pillows and blankets as an alternative. *See id.* at 17. These extra pillows and blankets were not always effective. *See id.* at 17–18. Dr. Horowitz was involved in this part of Mr. Tenore's care only briefly. She once told him she had no authority to grant his request for more bedding, which was incorrect if the evidence is viewed in the light most favorable to Mr. Tenore. *See id.* at 18–19, 21. She told him to ask officers for rolled-up bedding or clothing to raise his head and

/////

6

shoulders. *See id.* at 19. Eventually Mr. Tenore was able to secure enough blankets and pillows to elevate his head and shoulders as instructed. *See id.*

No clearly established law supports Mr. Tenore's claims of deliberate indifference against this evidentiary backdrop. On the question of meal frequency, the most closely analogous case appears to be the Ninth Circuit's decision in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).[3] In *Lopez*, the plaintiff's jaw was broken, and his mouth was wired shut for several months. *See id.* at 1131–32. He returned from the hospital to the prison with instructions to eat a liquid diet through a straw, but the prison gave him pureed food that he could not suck through a straw. *Id.* at 1132. He complained, but the prison refused to change his diet. *See id.* His recovery was slowed by his poor nutrition, and he lost weight. *See id.* Here, by contrast, Dr. Horowitz did not refuse Mr. Tenore's requests for more frequent meals outright. She granted that request when she thought it was appropriate, but later declined to renew it when she concluded he could sustain himself with more time in the cantina. *See* F&Rs at 19, 22. Dr. Horowitz's decision not to permit Mr. Tenore to continue eating in his cell also appears to have been isolated—a one-time denial— and under clearly established law, "isolated occurrences of neglect do not amount to a constitutional violation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1112 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 482–83, (1995). Some precedent even suggests that repeated failures might be "isolated." *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) ("Plaintiff alleges that defendants exhibited deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments by repeatedly failing to satisfy his requests for aspirins and antacids to alleviate his headaches, nausea and pains. Such isolated occurrences of neglect do not amount to a constitutional violation."). This ambiguity in the Ninth Circuit's decisions shows the relevant law was not clearly established.

Finally, Dr. Horowitz's denial of Mr. Tenore's request for more pillows also does not show deliberate indifference under clearly established law. As the Magistrate Judge explained, it appears her decision was either the consequence of her limited authority or a misunderstanding

---

[3] This case should not be confused with *Lopez v. Tell*, the unpublished decision discussed above. *See supra* note 2.

about her authority. *See* F&Rs at 21–22. If she had no authority to issue orders about bedding, then by definition, she was not the cause of any deprivation; the prison policy was the cause. If she did have authority, but mistakenly believed she did not, as appears more likely, the error would be neglect and could not serve as the basis for a constitutional claim under the Eighth Amendment, even if it could support a claim under state tort law. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in . . . treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). No evidence permits an inference she was lying outright. *Cf.* F&Rs at 21 ("[A different doctor] upheld [Dr.] Horowitz's finding that bedding, clothing and security restraints are not under the jurisdiction of the medical department.").

In sum, it is not "beyond debate" that Dr. Horowitz's decisions about Mr. Tenore's diet and bedding reflected deliberate indifference rather than negligent efforts to find alternative treatments, which cannot support an Eighth Amendment claim under clearly established law. *See, e.g.*, *Hamby*, 821 F.3d at 1093. In the circumstances of this case, it is therefore necessary to address only the second element of the qualified immunity test.

## II. CONCLUSION

The court **adopts in part** the Magistrate Judge's findings and recommendations:

1. Summary judgment is **granted** as to the claims against Dr. Smith.
2. Summary judgment is **granted** as to the claims that Dr. Horowitz's post-operative care was deliberately indifferent to Mr. Tenore's serious medical needs.
3. Summary judgment is **denied** as to the claims that Dr. Horowitz was deliberately indifferent to Mr. Tenore's serious medical needs in delaying his care.
4. Upon consideration of the record and Mr. Tenore's claims, the court finds that the appointment of counsel is appropriate for the limited purpose of conducting further discovery related to the Eighth Amendment claim against Dr. Horowitz for which this court has denied summary judgment, and assisting with any opposition briefing necessitated by a renewed motion for summary judgment if one is filed. This matter is **referred to the administrator of this District's pro bono panel of**

1 **attorneys**, **Sujean Park Castelhano**, for the identification of counsel to serve in this role.

5. To the extent the motion for summary judgment is denied, it is **denied without prejudice to renewal** after plaintiff's appointed counsel has an opportunity to conduct the discovery allowed by this order.

6. The matter is referred back to the magistrate judge for the setting of a schedule for reopened discovery once limited purpose counsel is appointed, consideration of whether referral to a settlement conference is appropriate at this time, and for all other pretrial purposes.

This order resolves ECF Nos. 60 and 68.

IT IS SO ORDERED.

DATED: April 7, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE